PAMALETA ELAINE CROSDALE,

    Movant,

vs.                                    REPORT OF
                                   MAGISTRATE JUDGE

UNITED STATES OF AMERICA,

    Respondent.
_____/


# I. **Introduction**


    This matter is before the Court on the movant's *pro se* motion to vacate, filed pursuant to 28 U.S.C. §2255, attacking the constitutionality of her sentence for importing into the United States a detectable amount of cocaine, entered following a guilty plea in **case no. 15-20086-Cr-Gayles.**


    This cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B),(C); S.D.Fla. Local Rule 1(f) governing Magistrate Judges; S.D. Fla. Admin. Order 2003-19; and Rules 8 and 10 Governing Section 2255 Cases in the United States District Courts.


    Before the Court for review are the movant's §2255 motion (Cv-DE#1), the government's response (Cv-DE#11) to this court's order to show cause, the Presentence Investigation Report ("PSI"), Statement of Reasons ("SOR"), stipulated factual proffer (Cr-DE#18), along with all pertinent portions of the underlying criminal file, including the sentencing (Cr-DE#39) transcript.

## II. <u>Claims</u>

Construing the §2255 motion liberally as afforded *pro se* litigants pursuant to <u>Haines v. Kerner</u>, 404 U.S. 519 (1972), the movant raises as a sole ground for relief that she is entitled to a minor role reduction under the federal sentencing guidelines, because she was not a leader or major player in the offenses. (Cv-DE#1:1-2). Movant claims the mitigating role adjustment is warranted, pursuant to Amendment 794 to U.S.S.G. §3B1.2, which took effect on November 1, 2015. (Cv-DE#1:2-5).

## III. <u>Factual and Procedural History</u>

### A. <u>Facts of the Offenses</u>

Briefly, on February 9, 2015, Customs and Border Protection ("CBP") conducted an enforcement examination on American Airlines Flight No. 1696, which arrived at Miami International Airport ("MIA"), in Miami-Dade County, in the Southern District of Florida. (Cv-DE#18). During an examination, a CBP narcotics canine alerted to the movant, a Jamaican citizen. (<u>Id</u>.). As a result, a secondary inspection of the movant's luggage was conducted, and the movant was given another pat-down search. (<u>Id</u>.). It was during the secondary inspection that CBP officers determined the movant had utilized a third-party company to purchase her airline ticket a few days prior to traveling. Travel records revealed that during the last year, the movant had made over 100 short trips, lasting between 1 to 2 days, to Miami from Jamaica. (<u>Id</u>.). Given all of the foregoing, CBP officials suspected that the movant might be a possible internal narcotics courier. (<u>Id</u>.). They requested and she then consented to being taken to Jackson Memorial Hospital ("JMH")

for an x-ray examination. (<u>Id</u>.). While waiting at JMH for the x-ray examination, CBP observed movant placing her hands inside her pants, and then walking into another room, near a sink, where officials continued observing an object protruding from movant's pants. Movant stated that she was removing "a densely packed container containing a white powdery substance," which later field tested positive for cocaine, and was determined to be cocaine hydrochloride, a Schedule II controlled substance. (<u>Id</u>.:2). The Drug Enforcement Administration's Chemical Analysis Report revealed that the movant knowingly and intentionally imported into the United States with intent to distribute cocaine hydrochloride, with a net weight of 498.7 grams +/- 0.2 grams. (<u>Id</u>.). Moreover, CBP seized $3,370.00 in currency from the movant. (<u>Id</u>.).

## B. <u>Procedural History</u>

Following her arrest, movant was charged with and pleaded guilty to importing into the United States, from a place outside thereof, a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. 952(a) and 18 U.S.C. §2. (Cr-DE#s6,21). After a thorough Rule 11 change of plea proceeding was conducted, the court accepted the movant's guilty plea and adjudicated her guilty of the above offense. (Cr-DE#21).

Thereafter, a PSI was prepared which set the movant's base offense level at a level 22, pursuant to U.S.S.G. §2D1.1(a)(5), because the movant was accountable for 498.7 grams of cocaine, and the offense involved possession with intent to distribute and import at least 400 grams, but less than 500 grams, of cocaine. (PSI ¶11). After a 3-level reduction was taken, based on movant's timely acceptance of responsibility, the total adjusted offense

level was set at a level 19. (PSI ¶¶18-20).

Next, the probation officer determined that movant had a total of zero criminal history points, resulting in a criminal history category I. (PSI ¶23). Based on a total offense level 19 and a criminal history category I, the movant's advisory guideline range was set at 30 months imprisonment, at the low end, and 37 months imprisonment, at the high end. (PSI ¶50). Statutorily, the movant faced a term of zero to 20 years imprisonment for violation of 21 U.S.C. §960(b)(3) and 841(b)(1)(C). (PSI ¶49). No formal objections to the PSI were filed.

On June 12, 2015, the movant appeared for sentencing. (Cr-DE#s27,39). At that time, movant's counsel confirmed no objections to the PSI had been filed, but did argue that the movant was "safety valve" eligible. (Cr-DE#39:3). According to the defense, he had communicated with the government to arrange a meeting so that the movant could provide a statement in support of application of the safety valve provision of the guidelines, but the meeting did not occur because the movant "is scared," fearing "retaliation if she gave a statement, other than to take responsibility for her own actions, especially since the general store she owns is part of her house. (Id.:3). Consequently, she feared putting her employees, her son, and herself at risk by giving law enforcement any information. (Id.:3-4). Counsel explained that, but for this fear, the movant would have been eligible for not only application of the safety valve, but also a minor role reduction, dropping her base offense level from a level 19 to a level 15, resulting in a guideline range of 18 to 24 months imprisonment. (Id.:4).

After hearing allocution from the movant, the court then noted that, absent a recitation which would result in application of the

4

safety valve, it was not inclined to vary from the guideline range,
but found that the minimum or bottom of the guideline range
appropriate. (<u>Id</u>.:5). After considering the statement of the
parties, the PSI, containing the guidelines, and the statutory
factors set forth in 18 U.S.C. §3553(a), the court then sentenced
the movant to a total term of 30 months imprisonment as to Count 1
of the Indictment, to be followed by three years supervised
release. (<u>Id</u>.:5-6). The Judgment was entered on June 12, 2015. (Cr-
DE#28). However, on **July 2, 2015,** an Amended Judgment was entered
correcting the movant's U.S. Marshal Number. (Cr-DE#29).

Movant did not prosecute a direct appeal. Thus, the Judgment
became final at the latest on **July 16, 2015,** fourteen days after
the entry of the Amended Judgment, when time expired for filing a
notice of appeal.[1] Consequently, the movant had one year from the
time her conviction became final, or no later than **July 16, 2016**
within which to timely file this federal habeas petition. <u>See</u>
<u>Griffith v. Kentucky</u>, 479 U.S. 314, 321, n.6 (1986); <u>see also</u>,
<u>See</u> <u>Downs v. McNeil</u>, 520 F.3d 1311, 1318 (11th Cir. 2008)(<u>citing</u>
<u>Ferreira v. Sec'y, Dep't of Corr's</u>, 494 F.3d 1286, 1289 n.1 (11th
Cir. 2007)(this Court has suggested that the limitations period
should be calculated according to the "anniversary method," under
which the limitations period expires on the anniversary of the date
it began to run); <u>accord</u> <u>United States v. Hurst</u>, 322 F.3d 1256,

---

[1]Where, as here, a defendant does not pursue a direct appeal, the
conviction becomes final when the time for filing a direct appeal expires. <u>Adams
v. United States</u>, 173 F.3d 1339, 1342 n.2 (11th Cir. 1999). On December 1, 2009,
the time for filing a direct appeal was increased from 10 to 14 days days after
the judgment or order being appealed is entered. <u>Fed.R.App.P.</u> 4(b)(1)(A)(i). The
judgment is "entered" when it is entered on the docket by the Clerk of Court.
<u>Fed.R.App.P.</u> 4(b)(6). Moreover, now every day, including intermediate Saturdays,
Sundays, and legal holidays are included in the computation. <u>See</u> <u>Fed.R.App.P.</u>
26(a)(1). If however, a movant is sentenced prior to the effective date of the
amendment, he/she has ten business days, excluding intermediate Saturdays and
Sundays, within which to file his/her notice of appeal. <u>See</u> <u>Fed.R.App.P.</u>
26(a)(1)(B).

1260-61 (10th Cir. 2003); United States v. Marcello, 212 F.3d 1005, 1008-09 (7th Cir. 2000)). Applying the anniversary method to this case means petitioner's limitations period expired on **July 16, 2016.**

The movant returned to this court on October 7, 2015, filing a motion to reduce her sentence, pursuant to 18 U.S.C. §3582(c), arguing that she was entitled to a reduction in sentence based on Amendment 782 to the U.S. Sentencing Guidelines which revised the Drug Quantity Tables. (Cr-DE#33). Following the government's response thereto, the court denied the movant's motion on the merits, noting it had considered and applied the amended guidelines which were, in fact, the subject of the movant's motion. (Cr-DE#36). No appeal of this order was prosecuted.

Next, over **one year** elapsed from the time the movant's conviction became final on **July 16, 2015**, until the movant filed the instant motion to vacate on **July 27, 2016,**[2] after she signed and then handed it to prison officials for mailing in accordance with the mailbox rule.[3] (Cv-DE#1:5). Absent evidence to the

---

[2]The movant signed and dated in his own writing showing the filing date as July 27, 2016, but in the certificate of service, he claims he signed and placed it in the prison mailbox on July 26, 2016, before he executed it. Consequently, absent evidence to the contrary, the court has utilized the date signed by the movant, and not that contained in the typed portion of the certificate of service for purposes of determining the filing date.

[3]"Under the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." Williams v. McNeil, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009); see Fed.R.App. 4(c)(1)("If an inmate confined in an institution files a notice of appeal in either a civil or a criminal case, the notice is timely if it is deposited in the institution's internal mail system on or before the last day for filing."). Unless there is evidence to the contrary, like prison logs or other records, a prisoner's motion is deemed delivered to prison authorities on the day he/she signed it. See Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001); Adams v. United States, 173 F.3d 1339 (11th Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

contrary, the motion is presumed filed on the date executed by the movant.

## IV.  Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to §2255 are extremely limited. A prisoner is entitled to relief under §2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. See 28 U.S.C. §2255(a); McKay v. United States, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).

"Relief under 28 U.S.C. §2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004)(citations omitted). It is also well-established that a §2255 motion may not be a substitute for a direct appeal. Id. at 1232 (citing United States v. Frady, 456 U.S. 152, 165, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982)). The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . "

The Eleventh Circuit promulgated a two-part inquiry that a district court must consider before determining whether a movant's claim is cognizable. First, a district court must find that "a

defendant assert[ed] all available claims on direct appeal." Frady, 456 U.S. at 152; McCoy v. United States, 266 F.3d 1245, 1258 (11th Cir. 2001); Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994). Second, a district court must consider whether the type of relief the movant seeks is appropriate under Section 2255. This is because "[r]elief under 28 U.S.C. §2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." Lynn, 365 F.3d at 1232-33 (quoting Richards v. United States, 837 F.2d 965, 966 (11th Cir. 1988)(internal quotations omitted)); see also, Spencer v. United States, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc), petition for cert. filed, (U.S. Feb. 20, 2015) (No.14-8449). The Spencer court, however, noted that a misapplication of the sentencing guidelines can never rise to the level of a fundamental "miscarriage of justice" necessary to make a Section 2255 claim cognizable. Spenser, 773 F.3d at 1143-44.

If a court finds a claim under Section 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him/her or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. §2255. To obtain this relief on collateral review, a petitioner must "clear a significantly higher hurdle than would exist on direct appeal." Frady, 456 U.S. at 166, 102 S.Ct. at 1584 (rejecting the plain error standard as not sufficiently deferential to a final judgment). Under Section 2255, unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court shall "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."

However, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). <u>See also</u> <u>Aron v. United States</u>, 291 F.3d 708, 715 (11th Cir. 2002)(explaining that no evidentiary hearing is needed when a petitioner's claims are "affirmatively contradicted by the record" or "patently frivolous"). As indicated by the discussion below, the motion and the files and records of the case conclusively show that movant is entitled to no relief, therefore, no evidentiary hearing is warranted.

In addition, the party challenging the sentence has the burden of showing that it is unreasonable in light of the record and the §3553(a) factors. <u>United States v. Dean</u>, 635 F.3d 1200, 1209-1210 (11th Cir. 2011)(<u>citing</u> <u>United States v. Talley</u>, 431 F.3d 784, 788 (11th Cir. 2005)); <u>United States v. Bernal-Benitez</u>, 594 F.3d 1303, 1320 (11th Cir. 2010). <u>see also</u>, <u>United States v. Bostic</u>, 645 Fed.Appx. 947, 948 (11th Cir. 2016)(unpublished).[4] The Eleventh Circuit recognizes "that there is a range of reasonable sentences from which the district court may choose," and ordinarily expect a sentence within the defendant's advisory guideline range to be reasonable. <u>United States v. Talley</u>, <u>supra</u>.

Further, in the case of claims challenging counsel's effectiveness for failing to raise alleged sentencing errors, the movant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense

---

[4]"Unpublished opinion are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. The Court notes this same rule applies to other Fed. Appx. cases cited herein.

level. <u>Glover v. United States</u>, 531 U.S. 198, 203–04, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." <u>Id</u>. at 203.

Likewise, a §2255 movant must provide factual support for his/her contentions regarding counsel's performance. <u>Smith v. White</u>, 815 F.2d 1401, 1406–07 (11th Cir.1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the <u>Strickland</u> test. <u>See</u> <u>Boyd v. Comm'r, Ala. Dep't of Corr's</u>, 697 F.3d 1320, 1333–34 (11th Cir. 2012); <u>Garcia v. United States</u>, 456 Fed.Appx. 804, 807 (11th Cir. 2012) (<u>citing</u> <u>Yeck v. Goodwin</u>, 985 F.2d 538, 542 (11th Cir. 1993)); <u>Wilson v. United States</u>, 962 F.2d 996, 998 (11th Cir. 1992); <u>Tejada v. Dugger</u>, 941 F.2d 1551, 1559 (11th Cir. 1991), <u>cert. den'd</u> <u>Tejada v. Singletary</u>, 502 U.S. 1105 (1992); <u>Stano v. Dugger</u>, 901 F.2d 898, 899 (11th Cir. 1990)(<u>citing</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)); <u>United States v. Ross</u>, 147 Fed.Appx. 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail ... are few and far between." <u>Chandler</u>, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. <u>Dingle</u>, 480 F.3d at 1099; <u>Williamson v. Moore</u>, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" <u>Dingle</u>, 480 F.3d

at 1099 (quoting <u>Adams v. Wainwright</u>, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." <u>United States v. Morrow</u>, 977 F.2d 222, 229 (6th Cir. 1992).

## V. <u>Discussion</u>

### A. <u>Timeliness</u>

From review of this §2255 motion, and from court records of which this Court can take judicial notice, it is apparent that this action is subject to dismissal as time-barred. As will be recalled, the movant's conviction became final at the earliest on **July 16, 2015.** Thus, this §2255 motion was due, in accordance with the anniversary method, at the earliest, no later than **July 16, 2016.** The filing of this federal motion on **July 27, 2016** is not timely.

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") created a limitation for a motion to vacate. Pursuant to 28 U.S.C. §2255(f), as amended April 24, 1996, a one year period of limitations applies to a motion under the section. The one year period runs from the latest of:

> (1) The date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (2) The date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant is prevented from filing by

such governmental action;

(3)　The date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)　The date on which the facts supporting the claim or claims could have been discovered through the exercise of due diligence.

See 28 U.S.C. §2255(f); see also, Pruitt v. United States, 274 F.3d 1315, 1317 (11th Cir. 2001); see also, Bousley v. United States, 523 U.S. 614 (1998)(new substantive not constitutional rule applies retroactively on collateral review, finding that the issue there was the product of statutory interpretation and not constitutional determinations that place particular conduct covered by a statute beyond the State's power to punish). The burden of demonstrating that the AEDPA's one-year limitation period was sufficiently tolled, whether statutorily or equitably, rests with the movant. See e.g., Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Gaston v. Palmer, 417 F.3d 1030, 1034 (9th Cir. 2005); Smith v. Duncan, 297 F.3d 809, 814 (9th Cir. 2002); Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir. 2002).

1.　**Section 2255(f)(1).** As will be recalled, under §2255(f)(1), the movant's conviction became final in **July 2015,** and the one year limitations period expired on **July 16, 2016.** The filing of this motion on **July 27, 2016,** over **1 year** after movant's conviction became final, is not timely. Consequently, movant is not entitled to statutory tolling of the limitations period. Therefore, movant cannot rely on §2255(f)(1) to establish the timeliness of

this motion since well over **one year** elapsed from the time the conviction became final until she filed this first §2255 motion.

2. **Section 2255(f)(3).** Movant also cannot establish that this federal petition was instituted within a year from the date upon which "the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." See 28 U.S.C. §2255(f)(3). Construing movant's argument in support of the timeliness of this federal proceeding, she appears to argue that the motion is timely because the amendment is retroactively applicable to cases on collateral review. However, as will be demonstrated in detail below, that is not the case, and this motion remains untimely.

3. **Section 2255(f)(4)**. Under §2255(f)(4), the movant also cannot demonstrate entitlement to statutory tolling of the limitations period because she only first learned of the legal significance of her claim upon her incarceration. It is clear that the nature and substance of the claim was readily ascertainable to the movant as early as the change of plea proceeding, and certainly by the time of sentencing. The movant has not demonstrated due diligence whatsoever to excuse the expiration of the federal limitations period.

4. **Equitable Tolling**. The foregoing, however, still does not end the inquiry. Under certain circumstances, the movant may be entitled to equitable tolling of the limitations period. However, the movant here has also not demonstrated that she is entitled to equitable tolling, which is a rare and extraordinary remedy. See San Martin, 633 F.3d at 1271. A petitioner is entitled to equitable

tolling "only if he [she] shows (1) that he [she] has been pursuing his [her] rights diligently, and (2) that some extraordinary circumstance stood in his [her] way and prevented timely filing." Holland, 560 U.S. 649 (citation and internal quotation marks omitted); see also Diaz v. Sec'y for Dep't of Corr's, 362 F.3d 698, 702 (11th Cir. 2004)(characterizing the equitable-tolling standard as a two-part test, stating that "equitable tolling is available only if a petitioner establishes *both* extraordinary circumstances and due diligence."(emphasis supplied)).

The extraordinary circumstances must be circumstances beyond the petitioner's control. See Hunter v. Ferrell, 587 F.3d 1304, 1308 (11th Cir. 2009). Further, there must be a causal connection between the alleged extraordinary circumstances and the late filing of the petition. See San Martin, 633 F.3d at 1267. The diligence required for equitable tolling to be warranted is "reasonable diligence, not maximum feasible diligence." Id. (quotations omitted).

For example, the Supreme Court has rejected the contention that counsel's mistake in miscalculating the federal limitations period entitles a petitioner to equitable tolling. See Lawrence v. Florida, 549 U.S. 327, 336–37, 127 S.Ct. 1079, 1088-89, 166 L.Ed.2d 924 (2007). Specifically, the Court has held that "[a]ttorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the post-conviction context where prisoners have no constitutional right to counsel." Id.

Next, in Holland, the Supreme Court, while reiterating that mere attorney negligence does not warrant equitable tolling, nevertheless held that an attorney's serious misconduct may warrant such tolling. 560 U.S. at 652. The defendant in Holland filed a *pro*

*se* federal habeas petition after the filing deadline had already
passed, but he contended that the statute of limitations should
have been equitably tolled. <u>Id</u>. at 635. In support, he alleged
that, during the two years while his state habeas petition was
pending before the Florida Supreme Court, his attorney, Mr.
Collins, communicated with him only three times, and each time only
by letter. <u>Id</u>. at 63 5-36. During this time, Mr. Collins never met
with him or updated him on the status of his case. <u>Id</u>. After
Collins argued Holland's appeal before the state supreme court,
Holland wrote him multiple letters regarding the importance of
filing his federal habeas petition timely. <u>Id</u>. at 637-39. Despite
Holland's attempts to communicate, Mr. Collins ultimately missed
the filing deadline for his federal habeas petition. <u>Id</u>. at 638-39.
Once Holland learned-in the prison library, not from his
attorney-that the Florida Supreme Court had already decided his
case and the federal filing deadline had passed, he immediately
filed his own *pro se* federal habeas petition. <u>Id</u>. at 639.

While the Supreme Court reiterated that "a garden variety
claim of excusable neglect, such as a simple miscalculation that
leads a lawyer to miss a filing deadline, does not warrant
equitable tolling," it concluded that Holland had not presented
such a "garden variety claim." 560 U.S. at 651-52 (internal
quotation marks omitted). Rather, the facts of Holland's case
presented "far more serious instances of attorney misconduct." <u>Id</u>.
The Court found that, while Mr. Collins' failure to timely file
Holland's federal habeas petition and his apparent unawareness of
the filing deadline date suggested simple negligence, that did not
mark the end of Collins' failures:

> Here, Collins failed to file Holland's federal
> petition on time despite Holland's many

> letters that repeatedly emphasized the
> importance of his doing so. Collins apparently
> did not do the research necessary to find out
> the proper filing date, despite Holland's
> letters that went so far as to identify the
> applicable legal rules. Collins failed to
> inform Holland in a timely manner about the
> crucial fact that the Florida Supreme Court
> had decided his case, again despite Holland's
> many pleas for that information. And Collins
> failed to communicate with his client over a
> period of years, despite various pleas from
> Holland that Collins respond to his letters.

Id. at 652. During his state post-conviction proceedings, Holland
had unsuccessfully sought to discharge his attorney, complaining to
the Florida Supreme Court that there had been "a complete breakdown
in communication," that counsel had "not kept him updated on the
status of his capital case," and that counsel had "abandoned" him.
Id. at 636-37 (quotation marks and brackets omitted). The Court
concluded that under the circumstances, Mr. Collins' misconduct may
have constituted extraordinary circum-stances warranting equitable
tolling, and remanded the case for such a determination. Id. at
652.

Two years later, in Maples v. Thomas, ___ U.S. ____, 132 S.Ct.
912, 181 L.Ed.2d 807 (2012), the Supreme Court revisited the
question of when attorney misconduct may rise to the level of
"extraordinary circumstances beyond a [petitioner's] control,"
albeit in the context of what it takes to establish cause to excuse
a state procedural bar to federal habeas relief. Id. at 924. In
Maples, the petitioner, an Alabama death-row inmate, had been
represented by two pro bono attorneys from a New York law firm and
a local attorney recruited for the sole purpose of allowing the
out-of-state attorneys to be admitted pro hac vice. Id. at 918-19.

While Maples' state post-conviction petition was pending, the two New York attorneys left their law firm for positions that rendered them ineligible to continue to represent him. Id. at 919, 924. Neither attorney, however, notified Maples of his departure and resulting inability to represent Maples. Id. at 919. Nor did either of them ask the state trial court for leave to withdraw or move for substitution of counsel. Id. Without the assistance of his listed attorneys of record, Maples did not receive timely notice of the denial of his state post-conviction petition and, as a result, failed to timely appeal that ruling, which led to the procedural default of his claims in federal court. Id. at 920–21.

As a result, in Maples, the Supreme Court reaffirmed the general rule that, "under well-settled principles of agency law," a petitioner "bears the risk of negligent conduct on the part of his [attorney]" and, for that reason, is ordinarily bound by counsel's failure to meet a filing deadline. Id. at 922 (quotation marks omitted). The Court held, however, that "[a] markedly different situation is presented ... when an attorney abandons his client without notice" and thereby "sever[s] the principal-agent relationship," at which point counsel's "acts or omissions ... cannot fairly be attributed to the client." Id. at 922–23 (quotation marks and brackets omitted). The Court concluded that counsel had abandoned Maples because, as a matter of both common sense and agency law principles, he was effectively "left without any functioning attorney of record" and had "been reduced to pro se status." Id. at 927.

The Eleventh Circuit, in Cadet v. Fla. Dep't of Corr's, 742 F.3d 473 (11th Cir. Jan. 31, 2014), considered Holland and Maples, in determining the test for equitable tolling of the AEDPA's statute of limitations period, where a petitioner alleges the late

filing was caused by his attorney's conduct. The Eleventh Circuit held that "attorney negligence, however gross or egregious, does not qualify as an 'extraordinary circumstance' for purposes of equitable tolling; abandonment of the attorney-client relationship, such as may have occurred in <u>Holland</u>, is required." <u>Cadet</u>, 742 F.3d at 481-82, at **8 (footnote omitted).

Unlike the situation in <u>Holland</u>, the circumstances in this case do not involve attorney misconduct. Rather, if movant means to suggest that she is an unskilled layperson who has limited knowledge of the law and is, therefore, entitled to liberal treatment, that claim does not warrant equitable tolling.[5] It is well settled that mere ignorance of the law or lack of knowledge of filing deadlines does not justify equitable tolling of AEDPA's limitation period. <u>See</u> <u>Johnson v. United States</u>, 544 U.S. 295, 311, 125 S.Ct. 1571, 1582 (2005)(stating that "the Court has never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness.").

The Eleventh Circuit has further held that a lack of a legal education and related confusion or ignorance about the law as excuses for a failure to file in a timely fashion does not warrant equitable tolling of the limitations period. <u>See</u> <u>Perez v. Florida</u>, 519 Fed.Appx. 995, 997 (11th Cir. 2013)(<u>quoting</u>, <u>Rivers v. United States</u>, 416 F.3d 1319, 1323 (11th Cir. 2005)(holding that while

_____

[5]As correctly maintained by movant, <u>pro</u> <u>se</u> filings are subject to less stringent pleading requirements, <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976), and should be liberally construed with a measure of tolerance. <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519 (1972). <u>See also</u> <u>Gomez-Diaz v. United States</u>, 433 F.3d 788, 791 (11th Cir. 2005); <u>Diaz v. United States</u>, 930 F.2d 832, 834 (11th Cir. 1991). However, contrary to movant's apparent belief, the policy of liberal construction for <u>pro</u> <u>se</u> litigants' pleadings does not extend to a "liberal construction" of the one-year limitations period.

movant's lack of education may have delayed his efforts to vacate his state conviction, his procedural ignorance is not an excuse for prolonged inattention when promptness is required)); <u>Felder v. Johnson</u>, 204 F.3d 168, 172-73 & n. 10 (5 Cir. 2000)(citing cases), <u>cert. den'd</u>, 531 U.S. 1035 (2000)(holding that ignorance of law and pro se status are insufficient to toll statute of limitations). As with any litigant, *pro se* litigants "are deemed to know of the one-year statute of limitations." <u>Outler v. United States</u>, 485 F.3d 1273, 1282 n.4 (11th Cir. 2007).

If movant means to argue that she is entitled to equitable tolling of the limitations period, in that the failure to review her challenges on the merits will result in a fundamental miscarriage of justice, that claim also warrants no relief. The law is clear that a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if such review is necessary to correct a fundamental miscarriage of justice. <u>See Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000); <u>Henderson v. Campbell</u>, 353 F.3d 880, 892 (11th Cir. 2003). This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." <u>Henderson</u>, 353 F.2d at 892.

As a threshold matter, the Eleventh Circuit has never held that Section 2255's limitations period carries an exception for actual innocence, and it has declined to reach the issue whether the absence of such an exception would violate the Constitution. <u>See e.g.</u>, <u>Taylor v. Sec'y, Dep't of Corr's</u>, 230 Fed. Appx. 944, 945 (11th Cir. 2007)("[W]e have never held that there is an 'actual innocence' exception to the AEDPA's one-year statute of limitations, and we decline to do so in the instant case because [the petitioner] has failed to make a substantial showing of actual

innocence."); <u>Wyzykowski v. Dep't of Corr's</u>, 226 F.3d 1213, 1218–19 (11th Cir. 2000)(leaving open the question whether the §2244 limitation period to the filing of a first federal habeas petition constituted an unconstitutional suspension of the writ). <u>But cf</u>. <u>United States v. Montano</u>, 398 F.3d 1276, 1284 (11th Cir. 2005)("Actual innocence is not itself a substantive claim, but rather serves only to lift the procedural bar caused by appellant's failure to timely file his §2255 motion."). However, several other circuits have recognized such an exception. <u>See</u>, <u>e.g</u>., <u>Souter v. Jones</u>, 395 F.3d 577 (6th Cir. 2005); <u>Flanders v. Graves</u>, 299 F .3d 974 (8th Cir. 2002). Assuming, without deciding, that a petitioner's actual innocence might support equitable tolling of the limitation period, notwithstanding, petitioner has failed to make a substantial showing of actual innocence.

Were "actual innocence" an exception to the application of the one-year limitations provisions of §2255, the Court would still be precluded from reviewing the claim presented in the instant petition on the merits. "To establish actual innocence, [a habeas petitioner] must demonstrate that ... 'it is more likely than not that no reasonable [trier of fact] would have convicted him [her].' <u>Schlup v. Delo</u>, 513 U.S. 298, 327-328, 115 S.Ct. 851, 867-868, 130 L.Ed.2d 808 (1995)." <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998). "[T]he <u>Schlup</u> standard is demanding and permits review only in the "'extraordinary' case." <u>House v. Bell</u>, 547 U.S. 518, 538 (2006).

Courts have emphasized that actual innocence means factual innocence, not mere legal insufficiency. <u>Id</u>.; <u>see also</u> <u>High v. Head</u>, 209 F.3d 1257 (11 Cir. 2000); <u>Lee v. Kemna</u>, 213 F.3d 1037, 1039(8 Cir.2000); <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107 (2 Cir. 2000)(<u>citing</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 299,

(1995); <u>Jones v. United States</u>,153 F.3d 1305 (11 Cir. 1998)(holding that appellant must establish that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him). <u>See also</u> <u>Bousley</u>, 523 U.S. at 623-624; <u>Doe v. Menefee</u>, 391 F.3d 147, 162 (2 Cir. 2004)("As <u>Schlup</u> makes clear, the issue before [a federal district] court is not legal innocence but factual innocence.").

To be credible, a claim of actual innocence requires the movant to "support his [her] allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." <u>Schlup v. Delo</u>, 513 U.S. at 324. All things considered, the evidence must undermine the Court's confidence in the outcome of the trial. <u>Id</u>. at 316. No such showing has been made here. Even if such an exception exists, the movant has failed to make the requisite showing of actual innocence that would support consideration of her untimely motion to vacate on the merits. On the record before this court, no fundamental miscarriage of justice will result by time-barring this federal petition.

Movant has, therefore, not made the threshold showing of actual innocence. In other words, movant has not presented sufficient evidence to undermine the court's confidence in the outcome of her criminal proceedings. <u>See</u> <u>Milton v. Sec'y, Dep't of Corr's</u>, 347 Fed.Appx. 528, 531-532 (11th Cir. 2009)(unpublished) (holding that affidavits proffered by *pro se* habeas petitioner were insufficient to establish actual innocence of murder, as would allegedly have created an exception to one-year limitations period, because affidavits were presented more than ten years after murder and eight years after petitioner's trial, the affiants were in most

cases aware of the alleged facts to which they attested before petitioner's trial, the affidavits were either not new evidence or were of questionable reliability, and none of the evidence negated petitioner's confession or his taped conversation with the victim's mother wherein he implicated another individual in the murder).

Under the totality of the circumstances present here, the movant's dilatory behavior cannot qualify her for equitable tolling. As a result of movant's failure to diligently pursue her rights, she has failed to demonstrate that she qualifies for equitable or statutory tolling. Consequently, this §2255 motion should be dismissed as time-barred.

Alternatively, if she means to argue that Amendment 794 is retroactively applicable to cases on collateral review, as will be discussed in detail below, that argument is devoid of merit. Amendment 794 is a clarifying amendment that has not been made retroactively applicable by the Sentencing Commission, nor the Eleventh Circuit. Consequently, the movant cannot use its enactment to circumvent the one year limitations period.

## B. **Merits**

Nevertheless, because the movant is not entitled to relief, a review on the merits follows. Here, the movant seeks a sentence reduction, claiming to be entitled to a mitigating role adjustment, pursuant to U.S.S.G. §3B1.2 of the United States Sentencing Guidelines. (Cv-DE#1). Her claim is premised on the Sentencing Commission's enactment of Amendment 794 to U.S.S.G. §3B1.2. The commentary of §3B1.2, states that the amendment became effective on **November 1, 2015,** long after the movant was sentenced. See Sentencing Guidelines For United States Courts, 80 Fed.Reg. 25,782,

25,782 (May 5, 2015) (stating that on April 30, 2015, the Sentencing Commission proposed amendments to §3B1.2 to become effective November 1, 2015). Movant asserts that Amendment 794 is retroactive because it announced a new substantive rule of law.

U.S. Sentencing Guidelines, Section 3B1.2 provides a decrease to a defendant's base offense level by up to four levels "[i]f the defendant was a minimal participant in any criminal activity," two levels "[i]f the defendant was a minor participant in any criminal activity," and three levels if the defendant's level of participation fell between minimal and minor. See U.S.S.G. §3B1.2. The commentary to §3B1.2 provides that a mitigating role adjustment is available to any defendant "who plays a part in committing the offense that makes him [her] substantially less culpable than the average participant." See id. U.S.S.G. §3B1.2 cmt. n.3(A).

However, Amendment 794 "left the text of §3B1.2 unchanged." United States v. Gomez, ___ F.3d ____, 2016 WL 3615688, at * 3 (5th Cir. July 5, 2016); see also United States v. Quintero-Leyva, 823 F.3d 519, 523 (9th Cir. 2016); United States v. Casas, 632 Fed.Appx. 1003, 1004 (11th Cir. 2015). Rather, the amendment modified §3B1.2's application notes by introducing a list of non-exhaustive factors that a sentencing court should consider in determining whether to apply a mitigating role adjustment. See Quintero-Leyva, 823 F.3d at 523. It is also worth noting that, generally, a court is required to use the guidelines manual in effect on the date a defendant is sentenced. See Dorsey v. United States, 132 S. Ct. 2321, 2332 (2012); U.S.S.G. §1B1.11(a) (requiring use of "the Guidelines Manual in effect on the date that the defendant is sentenced"). Amendment 794 was issued on **November 1, 2015.** See Quintero-Leyva, 823 F.3d at 521. Thus, it was enacted many months **after** the movant's **June 12, 2015** sentencing hearing

**(See Cr-DE#27)**. Even if a request for a mitigating role adjustment had been made, the movant has not demonstrated here that the court would have granted such a request. Consequently, movant cannot rely on Amendment 794 to obtain the relief requested.

Also, contrary to the movant's argument, the Sentencing Commission did not make the amendment retroactively applicable to cases on collateral review. See U.S.S.G. §1B1.10(d). Notwithstanding, the amendment also made no substantive change to U.S.S.G. §3B1.2. Rather, it merely "clarified the factors to consider for a minor-role-adjustment." See United States v. Casas, 632 Fed.Appx. 1003, 1004 (11th Cir. 2015); United States v. Cruickshank, 837 F.3d 1182, 1194 (11 Cir. 2016). In fact, the Sentencing Commission specifically explained that Amendment 794 is intended only as a clarifying amendment. U.S.S.G. Supp. App. C, Amend. 794 (Reason for Amend.) ("This amendment provides additional guidance to sentencing courts in determining whether a mitigating role adjustment applies.").

Thus, the court must first determine whether the movant's "claim that [her] sentence is contrary to a subsequently enacted clarifying amendment is cognizable under §2255." See Burke v. United States, 152 F.3d 1329, 1331 (11th Cir. 1998). The movant here, like the movant in Burke, is not entitled to relief under §2255. This is so because neither here, nor in Burke, was a direct appeal prosecuted. Id. 152 F.3d at 1331. After movant's sentencing, the Sentencing Commission added a clarifying amendment to the federal sentencing guidelines. Like the movant in Burke, the movant here has moved under §2255 to modify her sentence based on a clarifying change to the guidelines. Id. Because "§2255 is not a substitute for direct appeal," nonconstitutional claims, such as clarifying amendments to the Guidelines, "can be raised on

collateral review only when the alleged error constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demand of fair procedure.'" <u>Id</u>. (<u>quoting</u> <u>Reed v. Farley</u>, 512 U.S. 339, 348 (1994)).

As will be recalled, movant did not prosecute a direct appeal. Since Amendment 794 is a clarifying amendment resulting in no change to the substantive law, the movant had the opportunity to challenge the denial of a minor-role adjustment at her original sentencing and then on direct appeal, but even had she attempted to do so, there is no showing that had the issue been raised, she would have been granted a mitigating role reduction.

Therefore, this claim is not cognizable here, since the movant has not demonstrated a fundamental defect, nor that a complete miscarriage of justice will result from the failure to consider this claim.[6] While it is true that, in the direct appeal context, the Eleventh Circuit has recently held that Amendment 794 applies retroactively, it has yet to determine whether it applies retroactively to cases on collateral review. <u>See</u> <u>e.g.</u>, <u>United States v. Herrera Villareal</u>, ___ F.3d ___, 2016 WL 6123493 (11th Cir. Sept. 20, 2016)(<u>citing</u>, <u>United States v. Cruickshank</u>, ___ F.3d

---

[6]Movant is cautioned that arguments not raised by movant before the magistrate judge cannot be raised for the first time in objections to the undersigned's Report. <u>See</u> <u>Starks v. United States</u>, 2010 WL 4192875 at *3 (S.D. Fla. 2010); <u>United States v. Cadieux</u>, 324 F.Supp. 2d 168 (D.Me. 2004). "Parties must take before the magistrate, 'not only their best shot but all of the shots.'" <u>Borden v. Sec'y of Health & Human Servs.</u>, 836 F.2d 4, 6 (1st Cir. 1987)(<u>quoting</u> <u>Singh v. Superintending Sch. Comm.</u>, 593 F.Supp. 1315, 1318 (D.Me. 1984)). Thus, "[W]here a party raises an argument for the first time in an objection to a report and recommendation, the district court may exercise its discretion and decline to consider the argument." <u>Daniel v. Chase Bank USA, N.A.</u>, 650 F.Supp.2d 1275, 1278 (N.D. Ga. 2009)(<u>citing</u> <u>Williams v. McNeil</u>, 557 F.3d 1287 (11th Cir. 2009). Here, if movant attempts to raise a new claim or argument in support of this §2255 motion, the court should exercise its discretion and decline to address the newly-raised arguments.

_____, 2016 WL 5075936 at *7 (11th Cir. Sept. 20, 2016)). On this
basis alone, the movant's §2255 motion should be denied.

Notwithstanding, assuming the movant were entitled to review
on the merits, the movant is not entitled to relief. The Sentencing
Guidelines provide for a two-level decrease to a base offense level
if a defendant was a minor participant in the criminal activity.
U.S.S.G §3B1.2(b). A minor participant is one "who is less culpable
than most other participants in the criminal activity, but whose
role could not be described as minimal." Id. cmt. n.5. The Eleventh
Circuit, in United States v. De Varon, 175 F.3d 930 (11th Cir.
1999) (*en banc*), has held that when considering a request for a
minor-role reduction, court are to consider: "first, the
defendant's role in the relevant conduct for which [she] has been
held accountable at sentencing, and, second, [her] role as compared
to that of other participants in [her] relevant conduct." De Varon,
175 F.3d at 940. The De Varon court explained that "[t]hese
principles advance both the directives of the Guidelines and our
case precedent by recognizing the fact-intensive nature of this
inquiry and by maximizing the discretion of the trial court in
determining the defendant's role in the offense." Id. at 934.

In De Varon, the defendant was a drug courier, who ingested
and smuggled 70 heroin-filled pellets into the United States from
Colombia. Id. The Eleventh Circuit recognized that "when a drug
courier's relevant conduct is limited to her own act of
importation, a district court may legitimately conclude that the
courier played an important or essential role in the importation of
those drugs." Id. at 942-43. The court, however, declined to
"create a presumption that drug couriers are never minor or minimal
participants, any more than that they are always minor or minimal."
Id.

Instead, the Eleventh Circuit held that "the district court must assess all of the facts probative of the defendant's role in his/her relevant conduct in evaluating the defendant's role in the offense." Id. at 943. Therein, the Eleventh Circuit also offered examples of relevant factors, including the "amount of drugs, fair market value of drugs, amount of money to be paid to the courier, equity interest in the drugs, role in planning the criminal scheme, and role in the distribution." Id. at 945. The Eleventh Circuit emphasized that the examples are "not an exhaustive list," nor is "any one factor...more important than another," given that the court's determination is factually driven and "falls within the sound discretion of the trial court." Id. Ultimately, the Eleventh Circuit concluded that the trial court had the discretion to deny a minor-role adjustment, after it determined that the defendant was central to the importation scheme, had carried a substantial amount of high-purity heroin on her person, it was unclear from the record that he was less culpable than the other described participant in the scheme, and that he/she had furnished $1,000 of her own money to finance the smuggling enterprise. Id. at 945-46.

Through Amendment 635, the Sentencing Commission, adopted the Eleventh Circuit's De Varon findings that U.S.S.G. §3B1.2 does not automatically preclude a defendant from being considered for a mitigating role adjustment in a case in which the defendant is held accountable under §1B1.3, based solely for example, on the amount of drugs the defendant personally handled. See United States v. Cruickshank, 2016 WL 5075936, at *5-8 (11th Cir. 2016); see also, U.S.S.G. App. C, Amend. 635, Reason for Amendment. At the time of Amendment 635, the guidelines instructed that "a court must measure the defendant's role against the relevant conduct for which the defendant is held accountable at sentencing, whether or not other defendants are charged." Id.

27

In Amendment 794 to the U.S. Sentencing Guidelines, which went into effect in November 2015, **after** the movant's sentencing hearing, the Commission further clarified "the factors for a court to consider for a minor-role adjustment, and still continue to embrace the approach taken by the Eleventh Circuit in <u>De Varon</u>." <u>Id</u>. Specifically, Application Note 3(C) to U.S.S.G. §3B1.2, provides:

> In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:
>
> (i)   the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii)  the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv)  the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v)   the degree to which the defendant stood to benefit from the criminal activity.
>
> For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.

> The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity....

U.S.S.G. Supp. App.C, Amendment 794 (November 1, 2015).

In _Cruickshank_, the Eleventh Circuit recently recognized that Amendment 794 contained the "non-exhaustive list of factors" which it had previously "delineated in _De Varon_, including the defendant's role in planning and carrying out the scheme, as well as the amount the defendant stood to be paid." _Cruickshank_, _supra_ (_citing_ _De Varon_, 175 F.3d at 945. As previously narrated herein, the stipulated factual proffer reveals that the movant, a business person, was an essential player, as she made over 100 short trips in just one year, from Jamaica to the United States, during which she imported drugs with intent to distribute them in the Southern District of Florida. At the time of her arrest, she was in possession of 498.7 grams of cocaine hydrochloride, and $3,370.00 in cash. Given the stipulated factual proffer, under the factors set forth by the Eleventh Circuit in _De Varon_, and as clarified by Amendment 794, the court finds that even had the issue been raised at sentencing or on appeal, the movant would not have been entitled to a mitigating role determination. There is nothing of record to suggest that the movant played anything other than an integral role in the conspiracy.

After considering all of the facts probative of the defendant's role and her relevant conduct in the offense of conviction, the movant is not entitled to a mitigating role adjustment nor application of Amendment 794. It cannot be said that

had the sentencing court considered a mitigating role adjustment under the guidelines, that such a request would have been granted. The movant has not met her burden of proof, nor has she established that her sentence was rendered fundamentally unfair or that it constituted a miscarriage of justice sufficient to form the basis for collateral relief. <u>See</u> <u>Burke</u>, 152 F.3d at 1332. Therefore, movant is entitled to no relief on this claim.

In conclusion, the record reveals that movant is not entitled to relief on any of the arguments presented as it is apparent from the extensive review of the record above that movant's §2255 motion is not timely, and she is not entitled to application of Amendment 794. In other words, given the court's explicit findings on the record, as narrated previously, the court was aware of the movant's detailed history and involvement in the offense. As will be recalled, counsel argued in passing that the movant would have provided a statement in support of her role in the offense and application of the safety valve provisions of the guidelines, but for the fact that she feared retaliation from her coconspirators. Even assuming she had provided a statement in support of her role and the safety valve, had counsel argued for a minor role reduction, no showing has been made that the court would have exercised its discretion and granted the downward variance and/or otherwise departed from the applicable guideline range established at sentencing.

On the record here, it is evident that the movant cannot demonstrate deficient performance, much less prejudice, pursuant to <u>Strickland</u> to the extent the movant attempts to fault counsel for failing to pursue this issue either at sentencing or on appeal therefrom. Thus, the movant is not entitled to federal habeas corpus relief on the claim raised herein.

Moreover, given the sentence imposed, independent review of the record reveals that the sentence imposed was more than reasonable and lawful. Review of a sentence for reasonableness require a two-step process, ensuring that the sentence is both procedurally and substantively reasonable. United States v. Turner, 626 F.3d 566, 573 (11th Cir. 2010). A sentence is procedurally unreasonable if the district court erred in calculating the guideline range, treated the Sentencing Guidelines as mandatory, failed to consider the 18 U.S.C. §3553(a) factors, selected a sentence based on clearly erroneous facts, or failed adequately to explain the sentence, including any deviation from the guideline range. United States v. Rodriquez, 628 F.3d 1258, 1264 (11th Cir. 2010). The district court is not required to explicitly state that it considered the §3553(a) factors, as long as the court's comments demonstrate that it considered the factors when imposing sentence. See United States v. Dorman, 488 F.3d 936, 944 (11th Cir. 2007). However, the court did, in fact, state that it had considered the statutory factors and then gave reasons why it imposed the sentence it did. Absent a showing that the court would have given her an even lesser sentence, the movant cannot prevail on the claim.

A sentence is substantively unreasonable if the district court clearly erred in weighing the §3553(a) factors and imposed a sentence outside the range of reasonable sentences. Turner, 626 F.3d at 573; United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir. 2008). Under this standard, a district court need only impose a sentence that is within the range of reasonableness. Gall, 552 U.S. at 51, 128 S.Ct. at 597.

In addition, the party challenging the sentence has the burden of showing that it is unreasonable in light of the record and the §3553(a) factors. United States v. Dean, 635 F.3d 1200, 1209-1210

(11th Cir. 2011)(<u>citing</u> <u>United States v. Talley</u>, 431 F.3d 784, 788 (11th Cir. 2005)); <u>see also</u>, <u>United States v. Bostic</u>, 645 Fed.Appx. 947, 948 (11th Cir. 2016)(unpublished).[7] The Eleventh Circuit recognizes "that there is a range of reasonable sentences from which the district court may choose," and ordinarily expect a sentence within the defendant's advisory guideline range to be reasonable. <u>United States v. Talley</u>, <u>supra</u>.

Nevertheless, a district court is required to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" listed in §3553(a), including the need to reflect the seriousness of the offense; promote respect for the law; provide just punishment for the offense; deter criminal conduct; protect the public from the defendant's future criminal conduct; and provide the defendant with educational or vocational training, medical care, or other treatment. <u>See</u> 18 U.S.C. §3553(a)(2).

In imposing a particular sentence, the district court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guideline range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. <u>Id</u>. §3553(a)(1),(3)-(7). In considering the §3553(a) factors, the district court does not have to discuss each one explicitly. <u>United States v. Gonzalez</u>, 550 F.3d 1319, 1324 (11th Cir. 2008). An acknowledgment that the court "has considered the defendant's arguments and the §3553(a) factors will suffice." <u>Id</u>.

---

[7]"Unpublished opinion are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. The Court notes this same rule applies to other Fed. Appx. cases cited herein.

The Eleventh Circuit has further determined that sentencing courts can consider relevant conduct, including acquitted conduct, "so long as the facts underlying the conduct are proved by a preponderance of the evidence and the sentence imposed does not exceed the maximum sentence authorized by the jury verdict." United States v. Faust, 456 F.3d 1342, 1348 (11th Cir. 2006). Sentencing enhancements based on acquitted conduct do not violate the Fifth Amendment Due Process Clause or the Sixth Amendment. Id. at 1347-48. The sentencing court can also consider uncharged conduct in determining sentencing levels. United States v. Hamaker, 455 F.3d 1316, 1336 (11th Cir. 2006)(district courts are required to consider all relevant, not just charged, conduct in calculating the Guidelines range); see also United States v. Rodriquez, 398 F.3d 1291, 1300 (11th Cir. 2005) (the use of extra-verdict enhancements, under an advisory guidelines regime, is not unconstitutional).

Here, the record reveals that the court considered the PSI, which contained both the statutory factors regarding movant's history and characteristics, as well as, the arguments posited by the defense at sentencing, in determining that a term of 30 months imprisonment, the low end of the applicable guideline range set forth initially in the PSI, was warranted. There is nothing of record to show that the sentence imposed was procedurally nor substantively unreasonable, much less that, the sentence would have been less severe. The movant has thus failed to demonstrate that counsel was ineffective for failing to lodge any objection to the sentence imposed on the bases suggested herein. Therefore, no deficient performance or prejudice under Strickland has been established arising from counsel's failure to lodge meritless objections at sentencing or on appeal. Relief is therefore not warranted.

Even if counsel had done as alleged, thereby further preserving the issue below, and assuming further the court had denied a minor role reduction, the appellate court would only have vacated the sentences "if, but only if," the court was left with the definite and firm conviction that the district court committed a clear error of judgment by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case. See United States v. Irey, 612 F.3d 1160, 1190 (11th Cir. 2010)(*en banc*) (quotation omitted), cert. den'd, ___ U.S. ___, 131 S.Ct. 1813, 179 L.Ed.2d 772 (2011). Since movant cannot demonstrate that her sentence would have been less severe had counsel argued for a lesser sentence or otherwise further preserved the issue, she cannot show prejudice under Strickland. Thus, movant is entitled to no relief on the claim.

In conclusion, the record reveals that movant is not entitled to relief on any of the arguments presented as it is apparent from the extensive review of the record above that movant's guilty plea was entered freely, voluntarily and knowingly with the advice received from competent counsel and not involuntarily and/or unknowingly entered. See Boykin v. Alabama, 395 U.S. 238, 243 (1969); Brady v. United States, 397 U.S. 742, 748 (1970).[8] See also Hill v. Lockhart, supra; Strickland v. Washington, supra. 466 U.S. 668 (1984). Moreover, she received a sentence at the low end of the advisory guideline range set forth in the PSI. Consequently, she

---

[8]It is well settled that before a trial judge can accept a guilty plea, the defendant must be advised of the various constitutional rights that he/she is waiving by entering such a plea. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Since a guilty plea is a waiver of substantial constitutional rights, it must be a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. Brady v. United States, 397 U.S. 742, 748 (1970). A voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel may not be collaterally attacked. Mabry v. Johnson, 467 U.S. 504, 508 (1984).

cannot show that the total sentence imposed was either unreasonable or that there was error in the sentencing proceeding. She is thus entitled to no relief.

Finally, it should further be noted that this court has considered all of the movant's arguments raised in her §2255 motion. (Cv-DE#s1,4). <u>See Dupree v. Warden</u>, 715 F.3d 1295 (11th Cir. 2013)(<u>citing</u> <u>Clisby v. Jones</u>, 960 F.2d 925 (11th Cir. 1992)). This Court is mindful of the <u>Clisby</u>[9] rule that requires district courts to address and resolve all claims raised in habeas proceedings, regardless of whether relief is granted or denied. <u>Clisby</u>, 960 F.2d at 935-36 (involving a 28 U.S.C. §2254 petition filed by a state prisoner); <u>see</u> <u>Rhode v. United States</u>, 583 F.3d 1289, 1291 (11th Cir. 2009) (holding that <u>Clisby</u> applies to §2255 proceedings). However, nothing in <u>Clisby</u> requires, much less suggests, consideration of claims or arguments raised for the first time in objections. Therefore, to the extent the movant attempts to raise arguments or new claims in objections to this Report, the court should exercise its discretion and refuse to consider the arguments not raised before the magistrate judge in the first instance.[10]

## VI. <u>Evidentiary Hearing</u>

Movant is also not entitled to an evidentiary hearing on the claims raised in this proceeding. Movant has the burden of

---

[9]<u>Clisby v. Jones</u>, 960 F.2d 925, 936 (11th Cir.1992).
[10]The petitioner is cautioned that any attempt to provide due diligence in objections to this Report may not be considered in the first instance by the district court. <u>See</u> <u>Starks v. United States</u>, 2010 WL 4192875 at *3 (S.D. Fla. 2010); <u>United States v. Cadieux</u>, 324 F.Supp. 2d 168 (D.Me. 2004). This is so because "[P]arties must take before the magistrate, 'not only their best shot but all of the shots.'" <u>Borden v. Sec'y of Health & Human Servs.</u>, 836 F.2d 4, 6 (1st Cir. 1987)(<u>quoting</u> <u>Singh v. Superintending Sch. Comm.</u>, 593 F.Supp. 1315, 1318 (D.Me. 1984)).

establishing the need for an evidentiary hearing, and he/she would only be entitled to a hearing if his/her allegations, if proved, would establish his/her right to collateral relief. See <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473-75, 127 S.Ct. 1933, 1939-40, 127 S.Ct. 1933 (2007)(holding that if record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing). <u>See also Townsend v. Sain</u>, 372 U.S. 293, 307 (1963); <u>Holmes v. United States</u>, 876 F.2d 1545, 1553 (11th Cir. 1989), *citing*, <u>Guerra v. United States</u>, 588 F.2d 519, 520-21 (5th Cir. 1979)(holding that §2255 does not require that the district court hold an evidentiary hearing every time a section 2255 petitioner simply asserts a claim of ineffective assistance of counsel, and stating: "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record.").

## VII. <u>Certificate of Appealability</u>

As amended effective December 1, 2009, §2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rules Governing §2255 Proceedings, Rule 11(b), 28 U.S.C. foll. §2255.

After review of the record, Movant is not entitled to a certificate of appealability. "A certificate of appealablilty may

issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." <u>Id</u>. 28 U.S.C. §2253(c)(2). To merit a certificate of appealability, Movant must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he/she seeks to raise. <u>Slack v. McDaniel</u>, 529 U.S. 473, 478, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). <u>See also</u> <u>Eagle v. Linahan</u>, 279 F.3d 926, 935 (11th Cir. 2001). Because the §2255 motion is clearly time-barred, Movant cannot satisfy the <u>Slack</u> test. <u>Slack</u>, 529 U.S. at 484.

Further, after reviewing the issues presented in light of the applicable standard, the court concludes that reasonable jurists would not find debatable the correctness of the court's procedural rulings, much less that any the issues presented herein are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is not warranted. <u>See</u> <u>Miller-El</u>, 537 U.S. at 336-38; <u>Slack</u>, 529 U.S. at 483-84; <u>see also</u> <u>Slack</u>, 529 U.S. at 484-85 (each component of the §2253(c) showing is part of a threshold inquiry); <u>Rose</u>, 252 F.3d at 684.

However, as now provided by Rules Governing §2255 Proceedings, Rule 11(a), 28 U.S.C. foll. §2255: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## VIII. <u>Recommendations</u>

Based on the foregoing, it is recommended that the motion to vacate be DISMISSED as time-barred; and/or, alternatively DENIED on

the merits; that no certificate of appealability issue; and, that this case be closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 18th day of August, 2017.


_____
UNITED STATES MAGISTRATE JUDGE


cc:  Pamaleta Elaine Crosdale, Pro Se
     Reg. No. 05885-104
     F.C.I. - Aliceville
     Inmate Mail/Parcels
     Post Office Box 4000
     Aliceville, AL 35442

     Jonathan Kent Osborne, AUSA
     U.S. Attorney's Office - HIDTA
     11200 NW 20th Street, Suite 101
     Miami, FL 33172
     Email: Jonathan.Osborne@usdoj.gov